1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

QUILLER BARNES,

        Plaintiff,

  v.

AT&T PENSION BENEFIT PLAN -
NONBARGAINED PROGRAM,

        Defendant.

_____/

No. C 08-04058 MHP

**MEMORANDUM & ORDER**

**Re: Plaintiff Barnes' Motion to Amend the
Complaint**

      In this action, plaintiff Quiller Barnes ("Barnes") alleges that defendant AT&T Pension
Benefit Plan - Nonbargained Program ("the AT&T Plan") wrongfully denied him pension benefits to
which he was entitled.  Before the court is Barnes' first motion to amend his complaint.  Having
considered the parties' arguments and submissions and for the reasons stated below, the court enters
the following memorandum and order.

BACKGROUND

I.      Factual Background

      Barnes worked for Pacific Bell Telephone Company ("Pacific Bell") and Pacific Bell's
successors-in-interest from 1973 until October 29, 1996, and then again from May 1, 1997 to June
17, 2003.  During all periods of time in which he was employed by Pacific Bell, Barnes was enrolled
in the company's pension plan.  Upon the completion of his first stint with Pacific Bell ("the first
retirement"), Barnes had the option of receiving his accrued pension benefits, called an Accelerated

Transition Benefit ("ATB"), in either a lump sum or as an annuity.  Regardless of his choice, however, Barnes' ATB was subject to a discount because he had not yet been employed with Pacific Bell for 30 or more years (he had only been employed with Pacific Bell for approximately 24 years) and had not yet reached the age of 55 (he was 48 years and 5 months old).  Barnes elected for a lump sum payment of $309,878.38, which represented a 16.33% discount from the full value of his ATB.

Approximately six months later, Barnes began his second term of employment with Pacific Bell, when he was rehired in the same position on May 1, 1997.  As stated above, Barnes remained in that position until June 17, 2003, when he again terminated his employment ("the second retirement").  At least part of Barnes' justification for returning to Pacific Bell was to "bridge" his service.  Under the terms of the pension plan, an employee who is rehired can bridge his service, that is, add to his duration of employment for the purpose of pension benefit calculations, by remaining employed with the company for an additional five-year period.  Once that five-year barrier is met, the employees additional service, including the five-year bridging period, is added to his prior service.  Although the parties heavily dispute the issue, Barnes alleges that, under the terms of the pension plan, once an employee who accepted a discounted ATB successfully bridges his employment, the employee is entitled to a recalculated or redetermined ATB that accurately reflects the employee's additional years of service and increased age.[1]  This redetermined ATB, which would be offset by any ATB payments previously received by the employee, would compensate an employee for any discount that may have been applied to his pension benefits at the time of his first retirement.

Upon his return to the company, Barnes began receiving new statements reflecting the balance of his pension account.  His first statement, which he received on June 30, 1997, showed an ATB account balance of $222,414.83.  Barnes continued to receive pension statements, reflecting an ever increasing ATB balance through May 2000, when the statement indicated that his ATB account was valued at $342,267.15.  Barnes assumed that these statements reflected the value of the redetermined ATB that he would be entitled to once he bridged his service.  After May 2000, his statements no longer included any information regarding an ATB.

1    Because Barnes, during his second stint with Pacific Bell, remained with the company for

2    more than five years, he bridged his service.  At the time of his second retirement, he had been with

3    Pacific Bell for more than 30 years and had reached the age of 55.  Accordingly, had he not left the

4    company for an approximately six month period, he would have been entitled to a full, non-

5    discounted ATB.

6        When Barnes received his second retirement pension package, it did not include any

7    additional benefits to reflect his bridged service.  Thereafter,  Barnes submitted a complaint with the

8    Plan, contending that he was entitled to additional benefits.  The Plan denied Barnes' complaint,

9    whereupon Barnes appealed the denial through the Plan's internal review process.  After Barnes'

10   appeal was denied, Barnes filed this action.

11   II.    Procedural Background

12       Barnes originally filed this action in Contra Costa Superior Court on January 22, 2008.  The

13   twenty-paragraph complaint contained a single cause of action to recover benefits due under the

14   pension plan pursuant to the Employee Retirement and Income Security Act, 29 U.S.C. §

15   1132(a)(1)(B).  In short, the complaint alleged that after Barnes was rehired, remained employed for

16   a period of five years, and reached the age of 55, "he was entitled to full [ATB]," as opposed to the

17   discounted ATB he received upon his first retirement.  Docket No. 1 (Notice of Removal), Exh. A.

18   (Complaint) ¶ 15.  On August 25, 2008, the Plan removed the case to this court.  Notice of Removal.

19

20       Over the course of the one-and-a-half years that this action has been pending before this

21   court, this litigation has not progressed particularly far.  The court conducted an initial case

22   management conference on December 15, 2008, and a status conference on March 3, 2009.  Docket

23   Nos. 16 & 19.  At the March 3 conference, the court referred the case for Early Neutral Evaluation,

24   which was conducted on April 30, 2009 and did not result in the resolution of the case.  Docket No.

25   22.  At each of these stages, Barnes asserted that he was entitled to a larger pension benefit as a

26   result of the bridging of his employment.  *See* Docket No. 14 (Joint Case Management Statement) at

27   2 ("Plaintiff alleges Defendant wrongfully denied his claim for special accelerated benefits and

28

**United States District Court**
For the Northern District of California

3

United States District Court

For the Northern District of California

1  health benefits under the AT&T Pension Benefit Plan - Nonbargained Program."); Docket No.17
2  (Case Management Statement) at 3 (same).

3       At a June 1, 2009, status conference, Barnes informed the court that he wished to retain new
4  counsel.  Docket No. 25 (Minute Entry).  The court granted Barnes ninety days to retain counsel.  *Id.*
5  On August 17, 2009, Barnes, acting pro se, moved the court to appoint counsel on his behalf.
6  Docket No. 25.  Plaintiff represented himself at a September 14, 2009, status conference, during
7  which the court set deadlines for the filing of motions.  Docket No. 28 (Minute Entry).  On
8  November 4, 2009, the court denied Barnes' motion for the appointment of counsel.  Docket No. 30
9  (Order).

10      By November 16, 2009, Barnes was able to retain counsel, as R. Joseph Barton of Cohen
11  Milstein Sellers & Toll PLLC appeared on Barnes' behalf.  Docket No. 32 (Notice of Appearance).
12  Barnes' new counsel quickly moved for an extension of the motion deadlines, and soon thereafter,
13  on January  26, 2010, filed the instant motion to amend.  *See* Docket No. 34 & 39.

14      The Amended Complaint supplements the section 1132(a)(1)(b) claim with more detailed
15  allegations, and also adds two additional causes of action.  In the first additional claim (Count I),
16  Barnes alleges that the Plan violated ERISA by failing to "provide adequate notice in writing to any
17  participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the
18  specific reasons for such denial."  29 U.S.C. § 1133(1).  In substance, Barnes claims that in the
19  letters denying his claim and denying his appeal of the denial, the Plan cited to the plan's summary
20  plan description, as opposed to the terms of the pension plan itself.  Barnes further alleges that the
21  cited provisions in the summary plan description differ materially from the relevant terms of the
22  pension plan itself.  In the second additional claim (Count III), Barnes contends that the Plan
23  violated ERISA by unlawfully reducing his accrued benefits by means of an amendment to the
24  pension plan.  *See* 29 U.S.C. § 1054(g).  In substance, Barnes claims that his right to a redetermined
25  ATB was an accrued right as of his first retirement; Barnes further asserts that amendments to the
26  pension plan enacted after his first retirement eliminated this right, thereby violating 29 U.S.C.
27  section 1054(g).  Barnes also seeks to amend his complaint to bring a class action on behalf of all
28
                                              4

United States District Court

For the Northern District of California

1   similarly situated individuals who were employed by Pacific Bell, retired from the company and

2   were eligible for an ATB, were then rehired by the company, successfully bridged their service, and

3   did not receive a redetermined ATB.

4

5   LEGAL STANDARD

6          Federal Rule of Civil Procedure 15(a) provides for the amendment of pleadings by leave of

7   court and notes that such leave "shall be freely given when justice so requires." Fed. R. Civ. P.

8   15(a).  The rule in favor of permitting amendment recognizes that "[t]he purpose of pleadings is 'to

9   facilitate a proper decision on the merits,' and not to erect formal and burdensome impediments in

10  the litigation process." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (quoting

11  *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).  The Ninth Circuit has held that "Rule 15's policy of

12  favoring amendments to pleadings should be applied with 'extreme liberality.' " *United States v.*

13  *Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (quoting *Rosenberg Brothers & Co. v. Arnold*, 283 F.2d

14  406 (9th Cir. 1960) (per curiam)).

15         The grant or denial of a motion to amend is committed to the discretion of the trial court, and

16  denial is proper where there is "undue delay, bad faith or dilatory motive on the part of the movant,

17  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

18  opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v.*

19  *Davis*, 371 U.S. 178, 182 (1962); *see also Lockman Found. v. Evangelical Alliance Mission*, 930

20  F.2d 764, 722 (9th Cir. 1991).  An amendment is considered futile where the added claim could be

21  defeated by a motion to dismiss or for summary judgment. *See Wilson v. American Trans Air, Inc.*,

22  874 F.2d 386, 392 (7th Cir. 1989).

23

24  DISCUSSION

25         The Plan raises three grounds upon which it contends the motion to amend should be denied.

26  First, the Plan asserts that Barnes did not exhaust any of the claims in the Amended Complaint, and

27  that they are therefore barred by the exhaustion doctrine; although not stated explicitly, the Plan

28

5

1    seems to be arguing that because of the exhaustion bar, Barnes' claims are futile.  Second, the Plan

2    contends that the even if the exhaustion bar is not an obstacle, the newly added claims for relief

3    (Counts I and III) are substantively futile.  Finally, the Plan claims that the Amended Complaint is a

4    product of undue delay and would prejudice the Plan.  The court addresses each in turn.

5    I.       Futility

6             a.       Exhaustion

7             The Plan asserts that Barnes' motion to amend his complaint should be denied because

8    Barnes failed to exhaust each of the three causes of action included in his Amended Complaint.

9    Although ERISA itself does not contain any explicit exhaustion requirement, the Ninth Circuit "long

10   ago concluded that 'federal courts have the authority to enforce the exhaustion requirement in suits

11   under ERISA, and that as a matter of sound policy they should usually do so.' " *Vaught v.*

12   *Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Amato v.*

13   *Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)).  Accordingly, "before bringing suit under § 502, an

14   ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal

15   review procedures before bringing suit in federal court.' " *Id.* (quoting *Diaz v. United Agric.*

16   *Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir.1995)).  In contrast, however,

17   "[e]xhaustion of internal dispute procedures is not required where the issue is whether a violation of

18   the terms or provisions of the [ERISA] statute has occurred." *Graphic Commc'ns Union, Dist.*

19   *Council No. 2, AFL-CIO v. GCIU-Employer Retirement Ben. Plan*, 917 F.2d 1184, 1187 (9th Cir.

20   1990) (quotation marks and citations omitted)

21            Each count presents different exhaustion concerns; therefore, the court addresses each

22   separately.

23            1.       Count I: Failure to Provide Adequate Notice, 29 U.S.C. § 1133(1)

24            Barnes did not present his claim under 29 U.S.C. § 1133(1) during the administrative review

25   process, but contends that he was not required to specifically exhaust this issue.  The Ninth Circuit

26   has routinely held that claims brought under section 1133 do not require exhaustion because they

27   seek to enforce ERISA's statutory provisions, as opposed to the terms of the plan itself. *See Chuck*

28

United States District Court

For the Northern District of California

6

*v. Hewlett Packard Co.*, 455 F.3d 1026, 1036 (9th Cir. 2006) (holding that exhaustion is not required

for a claim regarding notification and review requirements under section 1133 of ERISA).

Accordingly, Barnes was not required to exhaust his section 1133(1) claim.

2.     Count II: Miscalculation of Pension Benefits, 29 U.S.C. § 1132(a)(1)(B)

The Plan concedes that Barnes exhausted *a* claim for additional pension benefits by availing

himself of the Plan's internal review procedures.  However, the Plan contends that the claim for

benefits that Barnes includes in his Amended Complaint is distinct from the claim for benefits

Barnes presented to the Plan, and that the the new claim has therefore not been exhausted.  The Plan

is mistaken.

The administrative complaint filed with the Plan, the initial complaint filed in state court, and

the Amended Complaint filed in this court all include similar claims for additional pensions benefits.

Although the details of the complaints are not identical, at base, they all contend that the Plan

violated ERISA by not paying Barnes additional pension benefits to which he was entitled once he

bridged his service after returning to Pacific Bell.  Barnes' new counsel have refashioned the claim,

stating that Barnes is seeking a "redetermined ATB," whereas Barnes previously sought a "second"

or "new" ATB.  This semantic difference is irrelevant.  The substance of the claim for benefits that

Barnes exhausted with the Plan and the claim for benefits included in the Amended Complaint are

sufficiently similar so that the exhaustion requirement will not serve as a bar to the amendment.

Further bolstering this conclusion is Ninth Circuit precedent establishing that, unless an

ERISA-governed plan requires that a claimant exhaust issues and theories, in addition to claims,

ERISA claimants are not required to exhaust issues and theories. *See Vaught*, 546 F.3d at 632; *Wolf

v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984) (cited with approval in *Vaught*,

and holding that "[s]ection 502(a) of ERISA does not require either issue or theory exhaustion; it

requires only claim exhaustion.").  The plan at issue in this litigation did not require issue and theory

exhaustion.  Therefore, by pursuing his unpaid benefits claim through the Plan's internal review

procedures, Barnes successfully exhausted the claim.

7

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.      Count III: Plan Amendment Reducing Benefits, 29 U.S.C. § 1054(g)

Claims brought under section 1054 to address any amendments to an ERISA-covered plan that has the effect of reducing accrued benefits present precisely the type of statutory claim that does not require exhaustion.  Numerous courts, including at least one within this Circuit, have held that claims brought under 29 U.S.C. § 1054(g) need not be exhausted prior to being brought in federal court.  *See Traylor v. Avnet, Inc.*, No. CV-08-0918-PHX-FJM, 2009 WL 383594, at *5 (D. Ariz. Feb. 13, 2009) ("Generally, an anti-cutback claim seeks to enforce specific statutory requirements under ERISA and thus does not require exhaustion.") (citing *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987), and *Goodin v. Innovative Tech. Solutions, Inc.*, 489 F. Supp. 2d 1157, 1162-63 (D. Haw. 2007)); *see also Coleman v. Pension Ben. Guar. Corp.*, 94 F. Supp. 2d 18, 22 (D.D.C. 2000) (holding that statutory claim under section 1054(g) need not be exhausted); *Bellas v. CBS, Inc.*, 73 F. Supp. 2d 493, 497 (W.D. Pa. 1999) (same).  Accordingly, that Barnes did not exhaust his claim under section 1054(g) presents no barrier to his amended complaint.

b.      Substantive Futility of Counts I and III

1.      Count I

The Plan argues that, even accepting all of the allegations in Barnes' amended complaint as true, he cannot state a claim for relief under 29 U.S.C. section 1133(1).  Specifically, the Plan asserts that the denial letters sent to Barnes explained the reasons for denying Barnes' claims, citing to sections of the summary plan description.  The Plan further argues that pursuant to Ninth Circuit law, a summary plan description comprises part of the plan documents to which a plan can cite when denying a claim, in satisfaction of section 1133(1).  *See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145-46 (9th Cir. 2002).

But as Barnes points out, the Plan's argument misses the point.  Barnes does not contend that the citations to the summary plan description, standing alone, constitute a violation of section 1133(1).  Rather, Barnes asserts that citing to the summary plan description, when the terms of the summary plan description are in conflict with the terms of the plan master document, is an ERISA violation.  Such a claim is cognizable.  *See Tavares v. Unum Corp.*, 17 F. Supp. 2d 69, 81 (D.R.I.

8

1998) (holding that citing the incorrect provision of a plan violates the section 1133(1).

Accordingly, Count I is not futile.

            2.    <u>Count III</u>

The Plan lumps its arguments regarding the futility of Count III together with its arguments regarding the futility of Count I.  It is not apparent from the Amended Complaint or the Plan's moving papers why the viability of Count I has any bearing on Count III, as Count III arises under a different statutory provision and requires different allegations, i.e., that an amendment to the pension plan decreased or eliminated an accrued benefit.  In any event, having already concluded that Count I is not futile, the court holds that Count III is not futile.[2]

II.    <u>Prejudice</u>

The Plan finally argues that Barnes proposed amended complaint is unduly delayed and that the Plan would suffer undue prejudice if Barnes is permitted to amend his complaint.  This argument is predicated solely upon the Plan's contention, rejected above, that Barnes' claim for benefits in the Amended Complaint differs significantly from his claim for benefits that he presented to the Plan during the administrative process.  There is simply no indication here that Barnes has unduly delayed.  Very little discovery has taken place in this case, and Barnes' newly retained attorneys moved for amendment shortly after making an appearance in this case.  Rule 15(a)'s strong preference in favor of permitting amendment easily outweighs any prejudice or delay that such amendment may cause.

<u>CONCLUSION</u>

For the aforementioned reasons, plaintiff Barnes' motion to amend the complaint is GRANTED.

        IT IS SO ORDERED.

Dated: April 2, 2010

                              _____
                              MARILYN HALL PATEL
                              United States District Court Judge
                              Northern District of California

United States District Court

For the Northern District of California

9

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ENDNOTES**

1.      The Plan unsurprisingly asserts that, under the terms of the pension plan, employees like Barnes, who elect to receive a lump sum ATB are not entitled to a redetermined ATB if they successfully bridge their employment.  The Plan also claims that when Barnes elected for a lump sum ATB after his first retirement, he signed a document acknowledging that he would not be entitled to any form of an additional ATB.

2.      The Plan's argument that Barnes is estopped, by reason of signing a benefit election form in 1996 upon his first retirement that indicated that he would receive no further pension benefits, from now arguing that he is entitled to additional benefits is also unpersuasive.  The Plan never raised this issue during the administrative review process, and is therefore precluded from doing so now.