United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUILLER BARNES,<br><br>    Plaintiff,<br><br>  v.<br><br>AT & T PENSION BENEFIT PLAN -<br>NONBARGAINED PROGRAM,<br><br>    Defendant.<br>_____/ | No. C 08-04058 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Plaintiff's Motion for Class Certification of His Second and Third Claims for Relief** |

    In this action, plaintiff Quiller Barnes ("Barnes"), on behalf of himself and all others similarly situated, alleges that defendant AT & T Pension Benefit Plan - Nonbargained Program ("AT&T") wrongfully denied him pension benefits to which he was entitled. Barnes' amended complaint asserts three causes of action under the Emploujyee Retirement and Income Security Act ("ERISA") for: (1) failing to provide adequate notice of the reasons for benefit denial, 29 U.S.C. § 1133(1); (2) failing to pay benefits due, 29 U.S.C. § 1132(a)(1)(B); and (3) violating ERISA's anti-cutback provision, 29 U.S.C. § 1054(g). Before the court is Barnes' motion for class certification of his second and third causes of action. Having considered the parties' arguments and submissions and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

The alleged facts, which the court previously recounted, *see Barnes v. AT & T Pension Ben. Plan*, No. 08-c-04058, 2010 WL 1340543, at *1-2 (N.D. Cal. Apr. 5, 2010), and about which there is little or no dispute, are as follows.

Barnes worked for Pacific Bell Telephone Company ("Pacific Bell") and Pacific Bell's successors-in-interest from 1973 until October 29, 1996, and then again from May 1, 1997 to June 17, 2003. During all periods of time in which he was employed by Pacific Bell, Barnes was enrolled in the company's pension plan for salaried employees. Upon the completion of his first stint with Pacific Bell ("the first retirement"), Barnes had the option of receiving his accrued pension benefits, called an Accelerated Transition Benefit ("ATB"), in either a lump sum or as an annuity. Regardless of his choice, however, Barnes' ATB was subject to a discount because he had not yet been employed with Pacific Bell for thirty or more years (he had only been employed with Pacific Bell for approximately twenty-four years) and had not yet reached the age of fifty five (he was forty-eight years and five months old). Barnes elected for a lump sum payment of $309,878.38, which represented a 16.33% discount from the full value of his ATB.

Approximately six months later, Barnes began his second term of employment with Pacific Bell, when he was rehired in the same position on May 1, 1997. As stated above, Barnes remained in that position until June 17, 2003, when he again terminated his employment ("the second retirement"). At least part of Barnes' justification for returning to Pacific Bell was to "bridge" his service. Under the explicit terms of the pension plan, an employee who terminated employment on or after March 22, 1996, and was rehired on or before October 31, 1997, could bridge his service, that is, add to his duration of employment for the purpose of pension benefit calculations, by remaining employed with the company for an additional five-year period. Once that five-year term is met, the employee's additional service, including the five-year bridging period, is added to his prior service. Although the parties heavily dispute the issue, Barnes alleges that, under the terms of the pension plan, once an employee who accepted a discounted, lump-sum ATB successfully bridges his employment, the employee is entitled to a recalculated or redetermined ATB that accurately

2

reflects the employee's additional years of service and increased age. This redetermined ATB, which would be offset by any ATB payments previously received by the employee, would compensate an employee for any discount that may have been applied to his pension benefits at the time of his first retirement.

Upon his return to the company, Barnes began receiving new statements reflecting the balance of his pension account. His first statement, which he received on June 30, 1997, showed an ATB account balance of $222,414.83. Barnes continued to receive pension statements, reflecting an ever increasing ATB balance through May 2000, when the statement indicated that his ATB account was valued at $342,267.15. Barnes assumed that these statements reflected the value of the redetermined ATB to which he would be entitled once he bridged his service. After May 2000, his statements no longer included any information regarding an ATB.[1]

Because Barnes, during his second stint with Pacific Bell, remained with the company for more than five years, he bridged his service. At the time of his second retirement, he had been with Pacific Bell for more than thirty years and had reached the age of fifty five. Accordingly, had he not left the company for an approximately six month period, he would have been entitled to a full, non-discounted ATB.

When Barnes received his second retirement pension package, it did not include any additional benefits to reflect his bridged service. Thereafter, Barnes submitted a complaint with AT & T, contending that he was entitled to additional benefits. AT & T denied Barnes' complaint, whereupon Barnes appealed the denial through AT & T's internal review process. Barnes appeal was denied on January 18, 2005. After Barnes' appeal was denied, Barnes filed this action on January 22, 2008.

II.   Class Definition

Barnes moves to have his second and third causes of action certified as a class action. Barnes proposes the following class definition:

> Participants in the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees ("PTG Pension Plan") (n/k/a the AT & T Pension Benefit Plan – NonBargained Program):

3

(a) who terminated their employment on or after March 22, 1996 with a company that participated in the PTG Pension Plan;

(b) who were eligible for an Accelerated Transition Benefit ("ATB"), which, because they had not attained the requisite age or years of credited service, was subject to an ATB Discount;

(c) who were subsequently rehired by a company that participated in the PTG Pension Plan on or before October 31, 1997, and worked at least five additional years; and

(d) either (i) at their next termination, did not have their ATB adjusted to reflect their age and term of employment at their next termination of employment or (ii) are still employed at a Participating Company,

or the beneficiaries of any of the persons described above.

## LEGAL STANDARD

A party seeking to certify a class must satisfy the four prerequisites enumerated in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[D]istrict courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010) (en banc). By probing into the merits, however, a district court is not empowered at the class certification stage to resolve disputes regarding the merits; rather, a court should inquire into the merits *only* to determine whether the plaintiff has satisfied the requirements of Rule 23. *Id.* at 586, 587, 591.

4

DISCUSSION

Barnes contends that the proposed class satisfies all of the requirements of Rule 23(a) and can be certified under both Rule 23(b)(1) and (2), or in the alternative, under Rule 23(b)(3). The Court addresses each argument in turn.

I.   Rule 23(a)

Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a). AT & T asserts that Barnes has failed to demonstrate that the commonality, typicality and adequacy prerequisites have been met.[2]

A.   Commonality

To fulfill the commonality prerequisite of Rule 23(a)(2), a plaintiff must establish that there are questions of law or fact common to the class as a whole. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. *Harris v. Palm Spring Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964). Individual variation among class members' questions of law and fact does not defeat underlying legal commonality; "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality test is 'qualitative rather than quantitative'—one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 603 F.3d at 599. In the Ninth Circuit, the requirements of Rule 23(a)(2) are to be construed "permissively." *Id.* (citing *Hanlon*, 150 F.3d at 1019).

Barnes has satisfied the commonality requirement. The primary question posed by his complaint is whether, under the terms of the PTG Pension Plan, once an employee who accepted a

5

discounted ATB successfully bridges his employment, the employee is entitled, upon his or her second retirement, to a recalculated or redetermined ATB that accurately reflects the employee's additional years of service and increased age. That question, which will require the court to interpret the terms of the pension plan, is common to every single member of the class.

AT & T does not argue to the contrary. Although AT & T directs some of its arguments in opposition to class certification toward the commonality requirement, those arguments speak more appropriately to the typicality and adequacy requirements. AT & T contends that a number of affirmative defenses—such as waiver, estoppel, laches and statute of limitations—would apply to most, if not all, putative class members, but would not apply to Barnes. The mere existence of factual differences between a class representative and the class he seeks to represent does not, however, provide grounds for finding an absence of commonality. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (holding that where class members were all subject to a common policy, "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality").

Accordingly, Barnes has met his burden of establishing commonality.

B.  Typicality

The typicality requirement necessitates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.

AT & T does not claim that Barnes' theory of recovery differs from those of the putative class members, nor has it identified any unique defenses applicable solely to Barnes. Instead, as alluded to above, AT & T suggests that Barnes is not typical of the class he seeks to represent because the absent class members will be subject to defenses not applicable to Barnes. AT & T also asserts that the putative class members' failure to have exhausted their claims for benefits through AT & T's internal review process makes Barnes atypical from the class. AT & T is, however, mistaken.

6

To begin with, in ERISA suits, absent class members are not required to have exhausted their claims through a plan's internal review procedures so long as the named plaintiff has done so. *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 500-02 (7th Cir. 2006); *Humphrey v. United Way of Tex. Gulf Coast*, No. H-05-0758, 2007 WL 2330933, at *13 (S.D. Tex. Aug. 14, 2007). Furthermore, as a general matter, failure to exhaust claims can be excused where appeal to internal review processes would be futile. *See Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991). In the instant case, AT & T maintains that it has and will continue to interpret the plan as it did for Barnes—denying employees who received a discounted, limp-sum ATB a redetermined ATB after bridging their service. For class members to exhaust their claims would therefore be futile. Consequently, the fact that Barnes has exhausted his claim through AT & T's internal appeal process, but the class members have not, would not make Barnes atypical from the class he seeks to represent.

More generally, defenses that may bar recovery for some members of the putative class, but that are not applicable to the class representative do not render a class representative atypical under Rule 23. *See In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 117 (C.D. Cal. 2007) (holding that unique defenses against some class members do not make a class representative atypical); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 241-42 (D. Ariz. 2001) (holding that typicality requirement met where defendant argued "it ha[d] valid defenses and counterclaims it may assert against some class members but not the named representative"); *see also In re K-Dur Antitrust Litig*, No. 01-1652, 2008 WL 2699390, at *6 (D.N.J. Apr. 14, 2008); *In re Scientific Atl. Secs. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007). This is so because Rule 23(a)(3) is primarily concerned with ensuring that there is no "danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to [him]." *Hanon*, 976 F.2d at 508. In the instant case, although the asserted defenses may bar some of the putative class members from ultimately receiving any additional pension benefits, none of the defenses would distract Barnes from representing the class' interests. This is especially true given the relief sought by Barnes. Barnes does not pray that, if he prevails on the merits, this court issue an order requiring AT & T to immediately pay additional

7

pension benefits to the class members. Instead, if his suit is successful, Barnes requests that the court declare that AT & T's interpretation of the plan is legally untenable, and that AT & T must recalculate benefits for those entitled to a redetermined ATB; thereafter, AT & T would not be precluded from raising certain defenses on a class-member by class-member basis. As a result, the defenses raised by AT & T are not germane to the central issue in this case.[3]

Accordingly, Barnes has met his burden of establishing typicality.

C.     Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 603 F.3d at 614. AT & T contends that Barnes is an inadequate representative for two reasons. First, they assert that he will not adequately litigate the waiver and estoppel defenses AT & T is asserting against the absent class members, and thus his interests are not aligned with the class. To be certain, the waiver and estoppel defenses will not be litigated in the course of litigating Barnes' representative claims. But the potential existence of those defenses against absent class members does not, standing alone, make Barnes inadequate. AT & T has cited "no authority for the proposition that an affirmative defense, which may affect some members of the class, creates a conflict that otherwise defeats the adequacy of a proposed class representative." *Contos v. Wells Fargo Escrow Co.*, No. 08-0838, 2010 WL 2679886, at *5 (W.D. Wash. July 1, 2010). Moreover, AT & T does not and cannot dispute that Barnes' interests are completely aligned with the class regarding the central issue in this case: whether employees who retired, took a discounted, lump-sum ATB, were rehired and successfully bridged their service are entitled to recover some or all of the discount in the initial pension benefit.

Second, AT & T suggests that because Barnes is a former, as opposed to a current, employee, he is not an adequate representative. In so arguing, AT & T relies upon an entirely erroneous interpretation of the Ninth Circuit's recent decision in *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d at

8

623, for the proposition that "[b]ecause Plaintiff is a former employee, he lacks standing to seek injunctive or declaratory relief as to future benefit determinations." Docket No. 154 (Opp'n) at 10 (citing *Dukes*). As discussed in *Dukes* and the cases to which *Dukes* cites, that rule—that former employees cannot seek injunctive or declaratory relief—is peculiar to employment discrimination cases where former employees "would not stand to benefit from an injunction requiring the anti-discriminatory policies [to cease] at [their] former place of work." *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). In contrast, ERISA explicitly provides that any participant in an ERISA-governed plan can seek injunctive and declaratory relief. 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3). The Supreme Court has interpreted the term "participant" to include "former employees who have . . . a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). AT & T concedes, as it must, that Barnes is a participant. As a result, he can sue under ERISA for injunctive and declaratory relief on behalf of himself and the class. His status as a former employee therefore does not preclude him from satisfying the adequacy requirement.

Accordingly, Barnes has met his burden of establishing that he would adequately represent the putative class.

II.     Rule 23

Having concluded that Barnes meets the four requirements of Rule 23(a), the court must determine whether Barnes satisfies either Rule 23(b)(1), (b)(2) or (b)(3). Barnes seeks certification of this case as a class action under Rule 23(b)(1) and (b)(2), or in the alternative, under Rule 23(b)(3).

A.      Rule 23(b)(1)

Under Rule 23(b)(1), a class action may be maintained if

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

9

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1). "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (Breyer, J.). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Id.* In the instant case, Barnes has satisfied both prongs of Rule 23(b)(1).

With respect to Rule 23(b)(1)(A), there is an obvious risk that if putative class members were required to litigate their claims individually, different adjudicative bodies could reach different conclusions regarding whether, under the terms of the plan, class members were entitled to recalculated ATBs. *See Lyerll v. Farmers Group Inc. Employees' Pension Plan*, No. CV 07-1576-PHX-JAT, 2008 WL 5111113, at *4-5 (D. Ariz. Dec. 3, 2008) (holding, in case where participants sought a recalculation of vested benefits upon a second term of employment, that the action would be certified as a class action under Rule 23(b)(1)(A)). Similarly, with respect to Rule 23(b)(1)(B), the resolution of Barnes' claim would be dispositive of other similarly situated plan participants because "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008).

AT & T opposes Barnes' arguments for certification under Rule 23(b)(1) by attempting to characterize Barnes' suit as one for money damages, as opposed to a suit for injunctive and declaratory relief. AT & T correctly posits that, in most circumstances, a suit for money damages should not be certified under Rule 23(b)(1). *See Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180 (9th Cir. 2001); *La Mar v. H & B Novelty & Loan Cor.*, 489 F.2d 461 (9th Cir. 1973). Barnes' suit does not, however, seek money damages as the primary form of relief. Rather, any monetary relief that would flow to the class members would be ancillary to injunctive relief sought: a declaration that, according to the terms of the plan, AT & T must recalculate participants ATBs to reflect their bridging of service. *See McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, ___ F.R.D. ____, 2010 WL 3033774, at *7 (W.D. Wash. Apr. 23, 2010) (holding that,

10

where the primary relief sought by plaintiffs was a declaration from the court regarding the proper interpretation of the plan, the suit was not primarily for money damages and was therefore certifiable under Rule 23(b)(1)).

Accordingly, Barnes has met his burden of demonstrating that his action can be certified under Rule 23(b)(1)(A) and (b)(1)(B).[4]

B. Rule 23(b)(2)

Barnes also seeks certification under Rule 23(b)(2). Under Rule 23(b)(2), a class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). Barnes has sufficiently demonstrated that certification under Rule 23(b)(2) is justified. AT & T's director of benefits, in her declaration, admitted that the interpretation of the plan that resulted in it denying Barnes' claim for a redetermined ATB would apply to any other plan participants who raised a similar claim. Docket No. 86 (Francis Dec.) ¶¶ 6, 8. As such, AT & T has essentially conceded that were any of the class members to present a claim for a redetermined ATB, it would be denied.

AT & T presents two arguments for why certification under Rule 23(b)(2) is inappropriate. The first—that Barnes' action seeks primarily monetary damages, rendering it incapable of being certified under Rule 23(b)(2), *see Dukes*, 603 F.3d at 623—has already been discussed and rejected above.[5] The second—that AT & T has not "acted or refused to act on grounds that apply generally to the class" because it has only "acted" with respect to Barnes—is as easily rejected. The Federal Rules Advisory Committee's Notes to the 1966 Amendments to Rule 23 squarely addresses AT & T's argument. The Committee explained that "[a]ction or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Advisory Committee's Note to 1966 Amendment of Rule 23(b)(2). Given that "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner," *Alday*, 619 F. Supp. 2d at 736, there can be no question that if any member of the class presented a claim

11

materially similar to Barnes', he or she would have received the same answer from AT & T: you are not entitled to a redetermined ATB. Consequently, that AT & T has not denied any such claims is of no moment to the Rule 23(b)(2) analysis.

Accordingly, Barnes has met his burden of establishing that his action can be certified under Rule 23(b)(2).

C.   Rule 23(b)(3)

Since Barnes seeks certification under Rule 23(b)(3) only in the event that the court denies the motion for certification under Rule 23(b)(1) and (b)(2), and the court has already granted the motion under Rule 23(b)(1) and (b)(2), the court need not consider whether certification would be appropriate under Rule 23(b)(3).

III.   Objections to Class Definition

Perhaps recognizing that Barnes' action was likely to be certified as a class action, AT & T devotes a significant portion of its opposition to objections to Barnes' proposed class definition. AT & T suggests that the class definition is imprecise and overbroad in that it includes: (1) individuals who elected to receive their discounted ATB as a monthly annuity at their first termination, as opposed to as a lump sum payment; (2) nonsalaried or bargained (i.e., unionized) employees, or individuals whose status changed to nonsalaried or bargained before bridging service; (3) individuals whose claims are barred by the statute of limitations; and (4) current employees who are participants of the plan.

AT & T correctly posits that the class, as currently defined, improperly includes individuals who elected to take a discounted ATB, but accepted payment in the form of an annuity, as opposed to as a lump sum. Because Barnes accepted his discounted ATB in a lump sum, he would not be typical of the subclass of individuals who took their discounted ATB as an annuity. Moreover, if individuals who accepted a discounted ATB as an annuity were included in the class, this action would no longer satisfy Rule 23(b)(1) or (b)(2); some of the class members would not be affected by the result of this litigation, and AT & T would not have acted or refused to act on grounds common to the class as a whole. Consequently, the class definition must be modified to limit the potential

12

class solely to individuals who upon their first retirement elected to receive a discounted ATB as a lump sum.

The remainder of AT & T's objections lack merit. Firstly, AT & T is simply mistaken that the proposed class definition includes nonsalaried and bargained employees. The class is explicitly limited to participants in the "Pacific Telesis Group Cash Balance Pension Plan for *Salaried* Employees ('PTG Pension Plan') (n/k/a the AT & T Pension Benefit Plan—*NonBargained* Program)" Mot. at 2 (emphasis added). Thus, it is apparent from the title of the relevant pension plans that nonsalaried and bargained employees could not participate, and therefore are excluded from the class.

Secondly, it would be improper to insert AT & T's statute of limitation's defense into the class definition.[6] Given the timing of the claims at issue in this case, the statute of limitations may preclude certain class members, especially those residing in California, from being entitled to a redetermined ATB, even if Barnes prevails on the merits. But whether or not every class member is entitled to a redetermined ATB is beside the point; as is discussed above, the primary purpose of this lawsuit is to receive a judicial proclamation regarding the proper interpretation of the plan. As long as Barnes' claim is not time-barred, and AT & T does not assert that it is, the statute of limitations is irrelevant to the contours of the class.[7]

Finally, rather than exclude current employees, current employees must be included in the class, as this litigation bears directly on how the plan will be interpreted upon their second retirement. Current employees are similarly situated to Barnes in all material respects; given AT & T's admission that it will continue to interpret the plan as it did upon Barnes' retirement, current employees will inevitably experience the same alleged improper denial of benefits suffered by Barnes. To exclude them from the class would create exactly the type of evil Rule 23(b)(1)(B) and (b)(2) were designed to avoid.

13

## CONCLUSION

Having concluded that plaintiff Barnes has satisfied all four requirements of Rule 23(a) as well as the requirements of Rule 23(b)(1) and (b)(2), plaintiff's motion to certify his second and third claims for relief as a class action is GRANTED.

The following class shall be certified:

Participants in the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees ("PTG Pension Plan") (n/k/a the AT & T Pension Benefit Plan – NonBargained Program):

(a) who terminated their employment on or after March 22, 1996 with a company that participated in the PTG Pension Plan;

(b) who were eligible for an Accelerated Transition Benefit ("ATB"), which, because they had not attained the requisite age or years of credited service, was subject to an ATB Discount;

(c) who elected to receive their discounted ATB as a lump-sum payment;

(d) who were subsequently rehired by a company that participated in the PTG Pension Plan on or before October 31, 1997, and worked at least five additional years; and

(e) either (i) at their next termination, did not have their ATB adjusted to reflect their age and term of employment at their next termination of employment or (ii) are still employed at a Participating Company,

or the beneficiaries of any of the persons described above.

Excluded from the class are any officers and directors of AT & T, Inc. or subsidiary companies owned directly or indirectly by AT & T (including Pacific Telesis, Pacific Bell and Nevada Bell) and any employees who had any decision-making or administrative authority relating to the interpretation of the PTG Pension Plan.

Plaintiff Barnes is hereby appointed as the representative of the class. Pursuant to Rule 23(g)(1), the law firm of Cohen Milstein Sellers & Toll LLC is appointed as Lead Counsel for the Class and the law firm of Springer-Sullivan & Roberts LLP is appointed Liaison Counsel for the Class.

14

Within thirty (30) days of the entry of this order, plaintiff shall submit to the court and serve on defendant a proposed form of notice to be sent to the class.  Defendant shall have fifteen (15) days to respond to the proposed notice submitted by plaintiff.

IT IS SO ORDERED.

Dated: August 31, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# **ENDNOTES**

1. AT & T claims that the amount of the ATB reflected on the statements that Barnes received during his second term of employment with AT & T were entirely in error.

2. AT & T concedes that the putative class, which by AT & T's own admission is comprised of at least 285 individuals, satisfies the numerosity requirement. *See* Docket No. 146 (Barton Dec.), Exh. C (Def.'s Resps. to Pl.'s 2d Set of Interrogs.). A class of that size easily satisfies Rule 23(a)(1)'s requirement that the class be so large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *see Quintero v. Mulberry Thai Siks, Inc.*, No. 08-c-02294, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 22, 2008) (Patel, J.) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." (citing 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004))).

3. It should also be noted that the waiver, estoppel and statute of limitations defenses upon which AT & T focuses in its briefing are asserted against Barnes and all class members. Docket No. 160 (Am. Ans.) ¶¶ 146 (statute of limitations),148 (estoppel), 149 (waiver). The court has barred AT & T from asserting a waiver or estoppel defense against Barnes as a result of AT & T's failure to present the defense during the internal review of Barnes' claim for benefits. *Barnes*, 2010 WL 1340543, at *6 n.2. That said, the fact that AT & T asserts all of the defenses against Barnes *and* the class members supports a finding of typicality.

4. Barnes should take note, however, that the court reserves for another day how certification under Rule 23(b)(1) may restrict the types of remedies, specifically monetary damages, available to the class in this litigation.

5. In this portion of its opposition, AT & T again raises the issue that Barnes is a former, as opposed to current, employee. AT & T suggests, correctly, that if Barnes was not bringing a claim for benefits, he would not possess standing to maintain this action. AT & T ignores, however, that the benefits sought by Barnes flow solely from injunctive and declaratory relief—an interpretation of the plan—that he seeks.

6. Because ERISA itself includes no explicit statute of limitations, courts look to analogous state statutes of limitations. A four-year statute of limitations applies to ERISA claims made by California residents, *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006); Cal. Code Civ. Proc. § 337, while a six-year statute of limitations applies to residents of Nevada, Nev. Rev. Stat. § 11.190. The statute of limitations on an ERISA claim for benefits starts to run either at the time a benefit is denied or when "the plan communicates a 'clear and continuing repudiation of claimant's rights under a plan such that the claimant could not have reasonably believed but that his benefits had been finally denied." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010).

7. To be certain, the statute of limitations may well be relevant if Barnes' interpretation of the plan were to win the day. For if the court determines that employees who successfully bridged their employment are entitled to a redetermined ATB, only those employees who are not barred by the relevant statute of limitations would be eligible to benefit from that interpretation.