UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUILLER BARNES,<br><br>   Plaintiff,<br><br> v.<br><br>AT&T PENSION BENEFIT PLAN -<br>NONBARGAINED PROGRAM,<br><br>   Defendant.<br>_____/ | No. C-08-4058 EMC<br><br>**ORDER (1) RE ATTORNEY'S FEES;<br>(2) GRANTING DEFENDANT'S<br>MOTION FOR LEAVE TO FILE<br>MOTION FOR RECONSIDERATION;<br>(3) GRANTING DEFENDANT'S<br>MOTION FOR RELIEF FROM ADR<br>LOCAL RULE 5-12; AND (4)<br>GRANTING DEFENDANT'S MOTION<br>FOR LEAVE TO FILE REPLY BRIEF**<br><br>**(Docket Nos. 355, 386, 392, 398, 405)** |

   Plaintiff Quiller Barnes filed suit against Defendant AT&T Pension Benefit Plan, Nonbargained Program (the "Defendant Plan"), alleging that the Defendant Plan violated his rights and the rights of others similarly situated by, *inter alia*, failing to pay full pension benefits in violation of ERISA. A final judgment in the case was entered on April 17, 2013. *See* Docket No. 354 (final judgment). Under that judgment, Mr. Barnes obtained only limited relief, either on his behalf or on the behalf of others. Mr. Barnes subsequently filed a motion for attorney's fees and costs. On July 26, 2013, this Court issued an order in which it granted the motion but asked for supplemental briefing so that the Court could determine the precise amount of fees that should be awarded. The parties have now filed supplemental briefs as well as what, in effect, are several motions to reconsider.

Having considered the parties' papers and accompanying submissions, as well as all other evidence of record, the Court hereby awards $193,461.63 in fees and $15,189.95 in "fees on fees." As for costs, the Court **GRANTS** the Defendant Plan's motion for leave to file a motion for reconsideration.

## I. DISCUSSION

A.  Attorney's Fees

   1.  Time Period for Count I

In its prior order, the Court concluded that, for Count I, Mr. Barnes was entitled at most to fees incurred prior to February 5, 2010. At best, only fees up to February 5, 2010, were appropriate because, as of that date, it was clear that the Defendant Plan was relying on § 3.4(a) of the Plan as a basis for denying Mr. Barnes's claim. In his supplemental brief, Mr. Barnes represents that he incurred $250,983.75 in fees (representing 473 hours) up to February 5, 2010. He asks to be awarded the entirety of that sum.

In response, the Defendant Plan essentially asks the Court to reconsider its prior ruling because Mr. Barnes was actually informed of the Defendant Plan's reliance on § 3.4(a) far earlier than February 5, 2010. According to the Defendant Plan, on April 20, 2009, it served an ENE statement on Mr. Barnes (more specifically, his prior counsel), and, in that statement, Mr. Barnes was given fair notice that the Defendant Plan was relying on § 3.4(a) as the basis for denying his claim for benefits. If the Court were to agree with the Defendant Plan, then this would eviscerate all fees sought by Mr. Barnes with respect to Count I ($250,983.75) because current counsel did not even start to incur fees until October 2009.

As a preliminary matter, the Court notes that, although the Defendant Plan is essentially asking for reconsideration, the Court shall not apply the restrictions of Civil Local Rule 7-9 here. This is because the Court did not expressly articulate its time limitation framework during the initial hearing on the fee motion, and, therefore, the Defendant Plan never had an opportunity to argue that Mr. Barnes had notice of § 3.4(a) very early on in the litigation. The Court's decision not to apply Civil Local Rule 7-9 is not unfairly prejudicial to Mr. Barnes because he is also seeking

reconsideration on various matters, for which the Court shall also decline to apply the Rule 7-9 standard.

Because the Court is not applying the Rule 7-9 standard, the Court gives little weight to Mr. Barnes's contention that the Defendant Plan's argument is untimely. This leaves Mr. Barnes with the arguments that (a) consideration of the ENE statement is not necessary to prevent manifest injustice; (b) judicial estoppel bars consideration of the ENE statement; and (c) the Defendant Plan failed to disclose that it would be relying on the ENE statement.

### a. Manifest Injustice

First, Mr. Barnes contends that it would not be manifest injustice for the Court to disregard the ENE statement because the ADR Local Rules actually provide for ENE statements to be confidential – including from the presiding judge.

This argument is not persuasive. It is true that, under ADR Local Rule 5-12, ENE statements are deemed confidential information that (1) may not be disclosed to, *inter alia*, the assigned judge, *see* ADR L.R. 5-12(a)(2), and (2) may not be "[u]sed for any purpose, including impeachment, in any pending or future proceeding in this court." ADR L.R. 5-12(a)(3). It is also true that the local rule provides for limited exceptions to confidentiality none of which is applicable here. *See* ADR L.R. 5-12(a)(B).

But the commentary to ADR Local Rule 5-12 shows that the rule is not quite so unforgiving as it might appear on its face. The commentary states: "Ordinarily, anything that happens or is said in connection with an ENE session is confidential in the same manner and for the same reasons as with mediation. *Please see the legal authorities cited in the commentary to ADR L.R. 6-12(c).*" ADR L.R. 5-12, commentary (emphasis added). The commentary for ADR Local Rule 6-12 provides that, "[o]rdinarily, anything that happened or was said in connection with a mediation is confidential" – citing in support, *inter alia*, Federal Rule of Evidence 408. ADR L.R. 6-12, commentary. The commentary then goes on to note that

> [t]he law may provide some limited circumstances in which the need for disclosure outweighs the importance of protecting the confidentiality of a mediation. *Accordingly, after application of legal tests which are appropriately sensitive to the policies supporting the confidentiality of mediation proceedings, the court may consider*

3

> *whether the interest in mediation confidentiality outweighs the asserted need for disclosure.*

ADR L.R. 6-12, commentary (emphasis added).

Here, the Court can use Rule 408 as a benchmark to see whether the ENE statement should be considered. Under Rule 408, evidence of "conduct or a statement made during compromise negotiations about the claim" is "not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a)(2). But here the Defendant Plan is not asking the Court to consider the ENE statement to disprove the validity or amount of Mr. Barnes's ERISA claims. Rather, the Defendant Plan is only asking for consideration of the ENE statement for purposes of a collateral issue – *i.e.*, attorney's fees. *See, e.g.*, *Mullen v. United States Army Crim. Investigation Command*, No. 1:10cv262 (JCC/TCB), 2012 U.S. Dist. LEXIS 93977, at *18 (E.D. Va. July 6, 2012) ("Turning next to Plaintiff's Motion for Attorneys' Fees, as a preliminary matter, this Court finds that '[Federal Rules of Evidence 408] does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case.'"). In particular, the ENE statement merely goes to notice as it affects attorney's fees.

Accordingly, the Court rejects Mr. Barnes's contention that the ADR Local Rules or the principles underlying the rules should bar the Court from considering the ENE statement.

### b. Judicial Estoppel

Second, Mr. Barnes asserts that judicial estoppel should prevent the Court from considering the ENE statement. *See* Docket No. 400 (Opp'n at 3). Although not entirely clear, Mr. Barnes's contention seems to be that, because the Defendant Plan has previously taken the stance that only the BPC can issue formal interpretations of the Plan, the Defendant Plan should not now be allowed to argue that he was informed of the basis for the denial of his claim through the ENE statement authored by defense counsel. *See* Docket No. 400 (Opp'n at 3-4).

///
///
///

4

1    This argument is not convincing for the reasons articulated by the Defendant Plan in its reply
2    brief.[1] That is,

> [t]he doctrine of judicial estoppel is an equitable doctrine a court may invoke to protect the integrity of the judicial process. It was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position.

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778 (9th Cir. 2009). Judicial estoppel applies where (1) the party to be estopped takes a current position that is "'clearly inconsistent'" with its earlier position; (2) the party to be estopped has succeeded in persuading the court to accept the earlier position; and (3) the party to be estopped would derive an unfair advantage if not estopped. *Id.* at 779. At the very least, judicial estoppel should not apply in the instant case because the Defendant Plan was *not* successful in persuading the Court to accepts its earlier position that only Plan interpretation by the BPC should count. *See* Docket No. 405 (Reply at 4).

### c.    Failure to Disclose

Third, Mr. Barnes argues that the Defendant Plan should not be able to rely on the ENE statement because it never previously disclosed that it would be relying on the statement as evidence in this litigation.[2] The problem here is that Federal Rule of Civil Procedure 26(a)(1) does not clearly require disclosure of information that is relevant to a collateral issue only such as attorney's fees. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring disclosure of "a copy – or a description by category and location – of all documents . . . that the disclosing party . . . may use to support its *claims or defenses*, unless the use would be solely for impeachment") (emphasis added).

---

[1] The Court **GRANTS** the Defendant Plan's motion for leave to file a reply brief. *See* Docket No. 405 (motion/reply).

[2] To the extent Mr. Barnes also argues that the Defendant Plan should not be able to rely on the ENE statement because the statement was never provided to his current counsel, *see* Docket No. 400 (Opp'n at 4), that argument clearly lacks merit. There is no dispute that the ENE statement was given to Mr. Barnes's former counsel (*i.e.*, his agent).

d. Summary

Because none of Mr. Barnes's technical arguments is persuasive, the Court is left with what is, in essence, the undisputed fact that the ENE statement of April 20, 2009, disclosed the Defendant Plan's reliance on § 3.4(a) of the Plan. To the extent Mr. Barnes tries to argue that at best only his prior counsel got notice of § 3.4(a) and not his current counsel, *see* Docket No. 400 (Opp'n at 2), the Court is not convinced that this is a reason to award him his fees up to February 5, 2010. The Defendant Plan cannot be blamed if Mr. Barnes's prior counsel failed to give documents to his current counsel.

Accordingly, the Court concludes that, for Count I, Mr. Barnes is not entitled to any of his current counsel's fees. Current counsel did not begin to incur fees until on or about October 2009. Mr. Barnes, however, was given notice as of April 20, 2009, that the Defendant Plan was relying on § 3.4(a) in denying his claim.

In conjunction with this ruling, the Court **GRANTS** the Defendant Plan's motion for relief from ADR Local Rule 5-12, *see* Docket No. 398 (motion), and further denies Mr. Barnes fees for the time spent opposing that motion.

2. Quicker Resolution for Count II

In its prior order, the Court concluded that, for Count II, Mr. Barnes was entitled at most to all fees incurred between January 20, 2011, and August 31, 2011. In his supplemental brief, Mr. Barnes asks for all fees incurred in that time period – *i.e.*, $203,846.25, which represents 455.8 hours of time. *See* Docket No. 393 (Pl.'s Supp. Br. at 6).

The Defendant Plan argues first that this sum should not be awarded because only time reasonably necessary to obtain the relief ultimately obtained should be awarded and, here, Mr. Barnes could have obtained the same exact relief through a much faster means – *i.e.*, by filing a motion to remand so that the BPC could decide in the first instance whether deferred annuitants would be covered by § 3.4(d)(3). *See* Docket No. 397 (Def.'s Supp. Br. at 5-6) (arguing that it would take no more than 20 hours to move to remand, which, at an hourly rate of $485, would result in a fee award of no more than $9,700).

The Court rejects this argument. The Defendant Plan was a party to this suit. Once it knew that deferred annuitants were a part of this case, it could have on its own initiated a procedure asking the BPC to issue a formal interpretation. It did not.

### 3. Lodestar for Count II

The Defendant Plan argues next, with respect to Count II, that the lodestar of $203,846.25 (representing 455.8 hours of time) is overstated and should be trimmed to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). According to the Defendant Plan, time that falls within these categories includes[3]:

(1) Time spent by Mr. Barnes's counsel after June 24, 2011, *i.e.*, the day that the Defendant Plan told Mr. Barnes that it would be asking the BPC to issue a formal interpretation (49.65 hours totaling $22,943.75), *see* Docket No. 397 (Def.'s Supp. Br. at 8);

(2) Time spent by Mr. Barnes's counsel on "wasted" work or work related to entirely different cases (34 hours totaling $16,011.25), *see* Docket No. 397 (Def.'s Supp. Br. at 9-10);

(3) Time spent by Mr. Barnes's counsel on clerical and secretarial tasks (69.35 hours totaling $23,012.50), *see* Docket No. 397 (Def.'s Supp. Br. at 12); and

(4) Time spent by Mr. Barnes's counsel for which there are either vague or block-billed time entries (112.4 hours totaling $51,282.50). *See* Docket No. 397 (Def.'s Supp. Br. at 13).

Altogether, this would be a reduction of approximately $113,250.00.

The Court rejects the Defendant Plan's attempt to cut into the lodestar because, in its original opposition to the fee motion, it never made a challenge to the lodestar and argued instead only limited success. Defendant's belatedly raised argument is not cognizable in the context of the instant motion.

### 4. Unrelated to Count II

The Defendant Plan argues next that the Court should reduce the lodestar because Mr. Barnes is asking for compensation for time spent on unrelated claims (*i.e.*, issues not related to the

---

[3] The Court acknowledges that the exact amount of reductions proposed by the Defendant Plan seem to have been based on the original time records supplied by Mr. Barnes, but Mr. Barnes has since modified the time for which he is seeking compensation after hearing some of the Defendant Plan's criticisms.

7

deferred annuitants). In particular, the Defendant Plan argues that there is $56,410.00 that may be deducted as that sum relates to time spent on (1) a subpoena issued to Fidelity Investments Institutional Services Company, Inc. and (2) two other third-party subpoenas. *See* Docket No. 397 (Def.'s Supp. Br. at 10-11).

The problem here is that, as the Court noted its in prior order, the Defendant Plan never argued – at least not in its papers – that "the unsuccessful claims were unrelated to the successful claims." Docket No. 386 (Order at 22). The Defendant Plan argues that it raised the issue at the hearing, *see* Docket No. 397 (Def.'s Supp. Br. at 8) (citing Docket No. 355 (Tr. at 12-13)), but, even here, it did not propose any specific hours that should be reduced – including but not limited to the Fidelity or other subpoenas.

5. Limited Success on Count II

Finally, the Defendant Plan argues that there should be a reduction of any fee award based on the limited success that Mr. Barnes obtained on Count II (*i.e.*, only deferred annuitants, not lump-sum payees, and only $46,000 for one deferred annuitant). The Defendant Plan proposes a percentage reduction of 50 to 70% across-the-board.

Mr. Barnes, of course, argues that there should be no across-the-board percentage reduction because all the fees incurred were reasonably necessary to obtain the relief ultimately achieved. Mr. Barnes identifies "several main categories of work" that make up the $203,846.25 in fees requested:

> 1) briefing on Plaintiff's Second Motion to Modify the Class Certification Order; 2) third-party discovery related to the production of participant data; 3) party discovery; 4) amending the Complaint; 5) drafting a motion for summary judgment; 6) joint case management statements and case management conferences; 7) Class notice and communications; and 8) other research and communication with counsel.

Docket No. 393 (Pl.'s Supp. Br. at 10-11); *see also* Docket No. 393 (Pl.'s Supp. Br. at 7) (chart). According to Mr. Barnes:

> Each of these main categories of tasks is sufficiently related to the Deferred Annuitants' ultimate success in the case. First, briefing on this motion to modify was for the exclusive benefit of the Deferred Annuitants. Second, the non-party discovery (of the third-party administrators of the Plan) related to the production of participant data was driven primarily by Class Counsel's need to obtain information about the Class and, in particular, information about the Annuitants,

8

> including what they had been paid and information to allow Class Counsel to assess how they should have been been paid and the administrative rules governing their benefit calculations. Similarly, the discovery of Defendant during this period of time centered on interrogatories about the benefits the Class members were paid and Defendant's affirmative defenses. The discovery was necessary, in part, due to Defendant's changing representation as to the number of Class members.
>
> After the March 1, 2011 Order [in which Judge Patel added the deferred annuitants to the case], before this case was re-assigned to this Court and before Defendant notified Plaintiff of its intent to conduct a voluntary remand, Plaintiff began drafting a motion for partial summary judgment. In light of the Court's preliminary interpretation of Section 3.4(d)(3) in its March 2011 Order, it was reasonable for Plaintiff to begin preparing a motion for summary judgment on behalf of the entire Class, including the Deferred Annuitants. Even before Defendant notified Plaintiff that it intended to conduct a "voluntary remand," the motion was in nearly final form and intended to seek summary judgment on Count I and Count II (on behalf of both the Annuitants and the Lump Sum participants). Because Defendant's interpretation of Section 3.4(d)(3) was the same (at that time) for all members of the Class, the arguments in Plaintiff's motion for summary judgment were essentially, if not completely, the same for all class members. Given that Defendant waited until July 2011 to ask the BPC to consider the Deferred Annuitants' claim when it knew in the Fall of 2010 the Deferred Annuitants were not being paid as per its previous representation, Plaintiff should be awarded for all time expended in preparing his motion for summary judgment.
>
> With respect to the categories with smaller amounts of time . . . each of these tasks [was] necessary to the litigation. During this timeframe when this time was expended, the Deferred Annuitants were part of the Class and Class Counsel litigated the case on their behalf. Because the crux of the Deferred Annuitants' claim and the Lump Sum Class members' claim was the same, the time expended on these tasks would be the same if the Class had consisted only of the Deferred Annuitants. As such, the Court should award all of this time.

Docket No. 393 (Pl.'s Supp. Br. at 11-12).

The Court finds merit to much of Mr. Barnes's argument. That is, even if lump-sum payees were not part of the case, in large part, Mr. Barnes would not have litigated the case any differently because his position for both lump-sum payees *and* deferred annuitants was that § 3.4(d)(3) was applicable to them. *Cf., e.g.*, *Velez v. Wynne*, 220 Fed. Appx. 512, 513 (9th Cir. 2007) (noting that, even though plaintiff did not prevail on her claim for disparate treatment, she did prevail on her claim for hostile work environment; remanding to determine reasonable fees taking into account success on the hostile work environment claim).

However, the Court must also take into account that the Defendant Plan did have a defense with respect to lump-sum payees that was not applicable to deferred annuitants (*i.e.*, that § 3.4(a) was applicable). Therefore, contrary to what Mr. Barnes suggests, he did have to spend time on lump-sum payees that was (for lack of a better word) "unique" to them.

This leaves open the question of what kind of a percentage reduction there should be based on the unique defense for lump-sum payees. Unfortunately, it is not clear from the record exactly how much of Mr. Barnes's focus was on defeating § 3.4(a). Defendant fails to make any factual showing in this regard. In the absence of any concrete information, the Court concludes that, at most, it should take no more than a 10% "haircut." *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that "the district court can impose a small reduction, no greater than 10 percent – a 'haircut– based on its exercise of discretion and without a more specific explanation"). Based on this haircut, Mr. Barnes is entitled to fees of **$183,461.63** (*i.e.*, $203,846.25 x 90%).[4]

6. <u>Plaintiff's Motion to Reconsider on Counts I and II</u>

Like the Defendant Plan, Mr. Barnes has also effectively moved for reconsideration of the Court's fee order.[5] In his supplemental brief, Mr. Barnes asks for the Court to make, in essence, "exceptions" to its time restrictions for Counts I and II and award additional fees. They are as follows:

(a) For Count I, fees incurred after February 5, 2010 – in particular, fees spent on opposing the Defendant Plan's motion for summary judgment (in which it stated its reliance on § 3.4(a)) ($110,077.50) because "the manner by which Defendant chose to inform Plaintiff of the plan

---

[4] While the Defendant Plan argues that fees should be reduced in light of the minimal results actually obtained, the substantial reduction imposed, particularly when compared to the trial lodestar for work on Counts I and II, renders the overall fee result reasonable, even when viewed in the context of the results obtained on the merits. *Cf. In re Hunt*, 238 F.3d 1098, 1105 n.8 (9th Cir. 2001) (noting that "an award of attorney's fees under 42 U.S.C. § 1988 that exceeds the amount of damages recovered is not per se unreasonable"); *see also City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986) (stating that, "[i]n the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under § 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves").

[5] As noted above, the Court shall not apply the Rule 7-9 standard to Mr. Barnes.

10

|   |   |
|---|---|
|   | provision . . . – via a motion for summary judgment – necessitated significant and unnecessary additional work by Plaintiff's counsel." Docket No. 393 (Pl.'s Supp. Br. at 5, 15). |
| (b) | For Count II, fees incurred for taking the 30(b)(6) deposition of the Defendant Plan in November 2010 ($56,210) as this was when the interpretation that § 3.4(d)(3) was *not* applicable to deferred annuitants was exposed. *See* Docket No. 393 (Pl.'s Supp. Br. at 5, 12). |
| (c) | For Count II, fees incurred before January 21, 2011, for moving to modify the class certification order ($21,162.50). *See* Docket No. 393 (Pl.'s Supp. Br. at 6, 13-14). |

The Court is not sympathetic to Mr. Barnes's request for additional fees as stated in (a) and (c) above. With respect to (a) above, the Defendant Plan as not moving for summary judgment on Count I; rather, it was moving for summary judgment on Count II (*i.e.*, that Mr. Barnes was paid all that he was owed). Therefore, Mr. Barnes's opposition to the summary judgment motion was all about Count II, and not Count I.

As for (c) above, the Court already addressed in its prior order why it was not starting fees for Count II until January 21, 2011 – *i.e.*, because it was not until the reply brief for the motion to modify the class certification order that Mr. Barnes brought up that he was asking for deferred annuitants to be paid a cash balance benefit (rather than a redetermined ATB). Mr. Barnes's attempt to characterize his earlier filed papers as fairly including a request for a cash balance benefit is not convincing. *See, e.g.*, Docket No. 199 (Mot. at 1) (asking the Court to define the class "as originally proposed by Plaintiff"); Docket No. 201 (proposed order for motion to modify) (focusing on redetermined ATB); *see also* Docket No. 240 (Order at 7) (order issued by Judge Patel) (noting that there had been a "slight[] shift[] [in] the focus of the litigation to the proper interpretation and application of section 3.4(d)(3) in its entirety, rather than its previous focus on the proper interpretation and application of the 'x' value within section 3.4(d)(3), namely, the redetermination of the ATB benefit upon successful bridging").

The only argument that has some merit is Mr. Barnes's contention that he should be awarded fees for the time spent on the 30(b)(6) deposition. As to this issue, the Court rejects Mr. Barnes's main contention that the Defendant Plan has conceded that he should be awarded fees incurred for

the deposition. It is true that, at the July 18, 2013, hearing on the fee motion, the Defendant Plan did state as follows:

> I would think the reasonable fee would be the fee for taking Ms. Francis's [30(b)(6)] deposition, and then filing a notice or making an exhaustion claim to the BPC, and that's why I think I suggested in my opposition brief that it you were to get that far, I don't know exactly what those hours are, but $25,000 sounded like a reasonable figure to me in that regard.

Docket No. 391 (Tr. at 33-34). But, as the Defendant Plan argues in its supplemental brief, this should not be construed as a concession that Mr. Barnes should be awarded deposition fees "under any other analysis, such as the one reflected in the Court's order." Docket No. 397 (Def.'s Supp. Br. at 6 n.3).

That being said, Mr. Barnes has a legitimate point in noting that, without the 30(b)(6) deposition, he never would have learned that the Defendant Plan was not construing § 3.4(d)(3) to cover deferred annuitants. Thus, some compensation for fees incurred for the deposition seems fair. The question is whether all of the fees for the deposition ($56,210) should be awarded.

On the one hand, there is the argument that only a minimal amount of the fees should be awarded because, out of a six-hour deposition (resulting in approximately 160 transcribed pages), only a brief part of the deposition focuses on deferred annuitants specifically. *See* Docket No. 200 (Roberts Decl., Ex. 2) (Depo. at 63-70). On the other hand, it may be argued that the bulk of the fees should be awarded because, even if lump-sum payees were not a part of the case, the deposition would largely been the same because Mr. Barnes's main contention was that § 3.4(d)(3) applied to lump-sum payees and deferred annuitants alike.

The Court finds that Mr. Barnes has failed to demonstrate it was reasonable to accrue $56,000 in fees in order to learn in the deposition that the Defendant Plan was not construing § 3.4(d)(3) to cover deferred annuitants. Based on the record, the Court finds $10,000 a reasonable amount in this regard.

///

///

///

7. <u>Summary</u>

Accordingly, for the reasons discussed above, the Court finds that no fees should be awarded for Count I and fees totaling **$193, 461.63** (*i.e.*, $183,461.63 + $10,000) should be awarded for Count II.

B. <u>"Fees on Fees"</u>

In its prior fee order, the Court did not address Mr. Barnes's motion for "fees on fees" – *i.e.*, for fees related to his motion for fees. The Defendant Plan claims that it understood that the Court's silence on the issue meant that there was a denial. But that is not a fair point. Fees on fees could not really be addressed until the Court determined what "underlying" fees should be awarded in the first instance. And even if the Court had implicitly denied the request for fees on fees, this would be a fair basis for Mr. Barnes to move for reconsideration (*i.e.*, manifest failure to consider arguments raised).

As to the fees on fees requested by Mr. Barnes, they total $106,917.50 for 224 hours of time. *See* Docket No. 393 (Pl.'s Supp. Br. at 14). This includes the work done on the supplemental brief.

Mr. Barnes should be awarded at least part of his fees on fees but not *all* of his fees on fees. How much he should be awarded depends in large part on how much Mr. Barnes is awarded for the "underlying" fees. *See, e.g.*, *Schwarz v. Secretary of Health & Hum. Servs.*, 73 F.3d 895, 909 (9th Cir. 1995) (concluding that "the district court was well within its discretion in awarding 50% of the fees-on-fees requested because this ratio actually exceeded the percentage by which Schwarz prevailed on her request for merits fees"); *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995) (stating that the Supreme Court has "recognize[d] that the relative degree of success in litigating for merits fees should bear upon the size of the fees-on-fees award"); *Harris v. McCarthy*, 790 F.2d 753, 757-59 (9th Cir 1986) (holding that district court did not abuse discretion by awarding fees-on-fees in the same 11.5% ratio it had awarded merits fees); *Geertson Seed Farms v. Johanns*, No. C 06-01075 CRB, 2011 U.S. Dist. LEXIS 129381, at *33 (N.D. Cal. Nov. 8, 2011) (stating that, "[b]ecause this Court reduced the attorneys' fees sought by Plaintiffs by 10%, a corresponding 10% reduction in the $98,180.08 sought by Plaintniffs in fees on fees reasonably reflects Plaintiffs' 'limited success' in litigating their fees motion").

Here, Mr. Barnes originally sought $1,364,241.25 million in fees (excluding costs and fees on fees). *See* Docket No. 355 (Mot. at 2); Docket No. 381 (Reply at 15). The Court has concluded that fees in the amount of $193,461.63 are appropriate. Thus, the Court has awarded Mr. Barnes 14.2% of the fees requested. The Court concludes that this percentage is fairly applied to the request for fees on fees. Accordingly, the Court awards Mr. Barnes 14.2% of the fees on fees, for a total of **$15,189.95** (*i.e.*, $106,971.50 x 14.2%).

C.  Costs

Finally, the Court **GRANTS** the Defendant Plan's motion for leave to file a motion to reconsider regarding costs. *See* Docket No. 392 (motion). The motion filed at Docket No. 392 shall be deemed the motion to reconsider. Mr. Barnes shall file an opposition brief within a week of this order. The Defendant Plan shall file a reply brief a week thereafter.

**The Court encourages the parties to meet and confer to see if they can reach agreement on costs given the rulings in this order.** In other words, the Court expects the parties to take positions that are consistent with this order, although it recognizes that a party may make a concession in light of the Court's rulings while still preserving the right to appeal.

## II.  CONCLUSION

For the foregoing reasons, the Court awards Mr. Barnes $193,461.63 in fees and $15,189.95 in fees on fees. Costs shall be determined at a later date after the parties' briefs are submitted.

This order disposes of Docket Nos. 392, 398, and 405.

IT IS SO ORDERED.

Dated: October 10, 2013

_____
EDWARD M. CHEN
United States District Judge